Filed 8/28/15  P. v. Powers CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>NATHAN LEE POWERS,<br><br>    Defendant and Appellant. | D068043<br><br><br>(Super. Ct. No. RIF10001948) |

APPEAL from a judgment of the Superior Court of Riverside County, Gary B. Tranbarger, Judge.  Affirmed.

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Elizabeth M. Carino, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Nathan Lee Powers not guilty of first degree murder and guilty of second degree murder. (Pen. Code, § 187, subd. (a); all further statutory references are to the Penal Code.) The jury further found that in commission of the offense, Powers intentionally discharged a firearm within the meaning of section 12022.53, subdivision (d). Powers admitted to shooting the victim, but asserted self-defense, which the jury was properly instructed on. On appeal, he contends the trial court erred in failing to instruct the jury on voluntary manslaughter based on sudden quarrel or heat of passion. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The shooting occurred in March 2010 at a mansion where a rap artist, Platinum, was filming a music video. The victim, Omar Sutton, was the person releasing the record. Until the very end of the night, the atmosphere was consistently described as positive, easygoing, and nice—like a "pool party"—with music, food, and liquor. Fifty to 80 people were present at any given time, including Platinum's family members and close friends. Female dancers had been hired to perform in the music video as well, and scenes were being filmed by professional cameramen in different locations on the property.

Late in the evening, Powers arrived at the party with his brother and cousin. Prior to arriving, they had discussed whether to bring a gun to the party, but decided against it. Powers's cousin had been invited to the party by his friend who was already there. Powers was in his early 30's, had been released from prison a few weeks earlier, and had a positive outlook on life. For the previous 10 years, he had been mostly in prison based on four felony convictions, including assault with a deadly weapon (a vehicle) on a police

2

officer, drug sales, another assault on a police officer while in possession of a stolen gun, and being a convicted felon in possession of a gun.

After arriving at the party, Powers called and invited his best friend, Kawaski Morris. In 2001, 2004 and 2010, Morris had been convicted and imprisoned for several felonies, including assault with a deadly weapon, carrying a loaded and concealed firearm, drug sales, and being a convicted felon in possession of a firearm. Powers socialized with various people at the party, met several women, and did some freestyle rapping. There was one minor "commotion" involving some guys (not Powers, Morris, or Sutton) that broke up pretty quickly, and Powers did not even know what the commotion was about. No other disputes occurred except for the one that immediately preceded Sutton's death.

A few minutes before he was shot, Sutton was having a friendly conversation with one of the cameramen and excused himself to "take care of something." Meanwhile, Powers and Morris were standing in front of the pool house, facing out with their backs against the wall. They were chatting with some women who were sitting in chairs. The last music video scene would be filmed in the pool house, and a crowd was gathering in the area.

The prosecution's eyewitnesses, including the party organizer, a cameraman, a music video director, and another party attendee, presented the following account of events from different vantage points. They observed Sutton aggressively approach Morris and Powers, Sutton used his hand to punch Morris, and Sutton and Morris began wrestling on the ground. The tussle was one-on-one, for "position," and not life or death.

3

Sutton was a "little guy"—only about five feet tall. None of the prosecution's witnesses saw Sutton with a gun that night, pull out any gun, or receive any assistance during the short ground tussle. Instead, witnesses positioned with unobstructed views observed Powers next pull out a gun from somewhere near his waist. No one saw Powers struggle with anyone for the gun.

Several prosecution witnesses then observed Powers shoot the gun multiple times. Standing over Sutton, he first fired a "warning" shot in the air, and then fired three or four more shots down. In between shots, the gun appeared to jam a couple times, and Powers was seen manipulating the jammed pistol and chambering it. After the shooting ended and Sutton was dead, Powers assisted Morris off the ground, bent down, removed a chain Sutton had been wearing around his neck, and ran off.

Powers and Morris testified at trial to a different account of events. Sutton and his associate approached them, asked where they were from, and identified themselves as "East Coast Crip" gang members. Sutton next told Powers and Morris to "slide those chains," which they interpreted as an attempted robbery of their gold chain necklaces. Powers testified that Sutton also threatened to "smack" them, i.e., shoot them, for the chains. Morris's exact response was, "I ain't going to be able to do it. Not going to be able to do that for you." Sutton presented a gun, demanded the chains and, within moments, used the gun to punch Morris in the nose. In the process, Morris was knocked to the ground and his chain was pulled off. Morris and Sutton began struggling with each other on the ground.

4

At that point, Powers testified that he knowingly went for the gun held by Sutton and got it quickly away; Powers wanted to defend himself and Morris, whom he loved like a brother, and he feared for his own life. Powers could not recall and did not know how many shots he fired until he fell back to the wall. He grabbed Morris off the ground, helped him up, and they ran away. Morris retrieved his chain from the ground before getting up. Powers discarded the gun and it was never found. Throughout several postarrest interviews with law enforcement, he repeatedly denied being the shooter and even knowing Morris.

Prior to closing arguments, Powers requested a jury instruction on voluntary manslaughter under sudden quarrel or heat of passion, which was denied. The trial court found there was insufficient evidence that Powers was acting under a strong emotion or heat of passion, and the jury would be receiving applicable instructions on both self-defense and imperfect self-defense. Powers's motion for new trial based on the same grounds was also denied. At the motion hearing, the court acknowledged that "fear" could drive a defendant to kill in the heat of passion, but found the failure to instruct on heat of passion was harmless given the jury's verdict.

DISCUSSION

I

*Guiding Principles*

We independently review a trial court's decision not to instruct on a lesser included offense, resolving all doubts on the sufficiency of evidence to warrant an

5

instruction in the defendant's favor.  (*People v. Avila* (2009) 46 Cal.4th 680, 705; *People v. Moye* (2009) 47 Cal.4th 537, 562 (*Moye*).)

The trial court has a duty to instruct the jury on all lesser included offenses if there is substantial evidence from which a jury can reasonably conclude the defendant committed the lesser, uncharged offense, but not the greater.  (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).)  "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury."  (*Id.* at p. 162.)  This instructional requirement " 'prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other.' "  (*People v. Smith* (2013) 57 Cal.4th 232, 239.)

Murder is the unlawful killing of a human being with malice aforethought.  (§ 187, subd. (a).)  A defendant who commits an intentional and unlawful killing but who lacks malice is guilty of voluntary manslaughter.  (§ 192.)  Generally, the intent to unlawfully kill constitutes malice.  (§ 188; *Moye, supra,* 47 Cal.4th at p. 549.)  A defendant lacks malice when he acts in a " ' "sudden quarrel or heat of passion," ' " or kills in " ' "unreasonable self-defense"—the unreasonable but good faith belief in having to act in self-defense [citations].' "  (*Moye*, at p. 549.)  If substantial evidence supports both forms of voluntary manslaughter, the trial court must instruct on both.  (*Breverman, supra,* 19 Cal.4th at pp. 160-161.)

6

An instruction on heat of passion is not required, however, "in every case in which the *only* evidence of unreasonable self-defense is the circumstance that a defendant is attacked and consequently fears for his life." (*Moye*, *supra*, 47 Cal.4th at p. 555.) A heat of passion theory of manslaughter has both an objective and a subjective component. (*Id.* at p. 549.) The objective component requires the defendant's homicidal conduct in the heat of passion be caused by a legally sufficient provocation. (*Ibid.*) "The provocative conduct by the victim may be physical or verbal, but the conduct must be sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection." (*People v. Lee* (1999) 20 Cal.4th 47, 59.)

To satisfy the subjective component, the accused must be shown to have killed while under "the actual influence of a strong passion" induced by such provocation. (*People v. Wickersham* (1982) 32 Cal.3d 307, 327, disapproved on another ground in *People v. Barton* (1995) 12 Cal.4th 186, 201.) "Heat of passion arises when 'at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment.' " (*Barton,* at p. 201.)

II

A

*Jury Instructions*

The jury in this case was instructed both on justifiable homicide based on reasonable self-defense, which is a complete defense to murder, and on manslaughter

7

based on unreasonable or imperfect self-defense, which reduces murder to voluntary manslaughter. (*Breverman, supra,* 19 Cal.4th at pp. 153-154.) At the close of evidence, the defense also requested an instruction on sudden quarrel/heat of passion voluntary manslaughter, which was denied. We find there was insubstantial evidence to warrant instruction on a sudden quarrel/heat of passion theory of voluntary manslaughter.

As our Supreme Court has discussed, not every violent "attack" may provoke a person to kill under the influence of an intense emotion that obscures or disturbs his or her reasoning abilities. (*Moye*, *supra*, 47 Cal.4th at pp. 554, 555.) In *Moye*, the defendant testified that the victim saw him on the fatal morning, said with a smirk, " 'Yeah, now I got you,' " and then proceeded to attack him with a baseball bat. (*Id.* at p. 552.) After the victim hit him four or five times, defendant was able to grab the bat. (*Ibid.*) Defendant then struck the victim again and again, each time in claimed self-defense, and explained at trial he did not want to " ' "get beat down and possibly be killed, so I was just worried about getting hit." ' " (*Id.* at p. 553.) Under these circumstances, the court held there was not substantial evidence to support a heat of passion jury instruction. (*Ibid.*) Rather, "the thrust of defendant's testimony" was self-defense, both reasonable and unreasonable. (*Id.* at p. 554.)

Here, Powers and Morris had no history of animosity with Sutton or anyone else at the party, and there were throngs of innocent bystanders present, including dancers, cameramen, and Platinum's older family members. Assuming that five-foot-tall Sutton was threatening to rob them, there is no evidence to support that Morris was scared or angry—both he and Powers were strong, adult men, accustomed to potentially violent

8

confrontations. Indeed, in response to Sutton's demand for his chain, Morris either remained quiet or stated matter-of-factly, "Not going to be able to do that for you." Powers, who did not actually quarrel with anyone, was silent and collected enough to observe that Sutton was quite drunk. Accepting that Sutton pulled a gun on them, Powers instinctively went for the gun, quickly got it away from Sutton and, while in fear, fired to defend himself and Morris. Like in *Moye*, the thrust of Powers's testimony was that he acted to defend himself and Morris from imminent, further attacks.

To support that he killed under heat of passion and great stress, Powers argues that he testified he could not even remember how many shots he fired. But Powers apparently took care not to shoot Morris who was, by all accounts, wrestling with Sutton on the ground as Sutton was shot. Moreover, where Powers presented no evidence of the number and manner of shots fired, the People supplied eyewitness testimony, expert opinions, and physical evidence establishing that Powers's shooting was neither random nor indiscriminate. Multiple witnesses observed Powers standing over Sutton, fire a "warning" shot in the air to clear the area, and then point the remaining shots down at Sutton, taking short breaks in between to manipulate the jammed gun. An investigator opined that a fresh strike mark on the ground indicated the gun had been fired down at least once. A forensic pathologist testified that Sutton died of multiple gunshot wounds delivered to his neck and chest in close proximity, and he was not shot elsewhere on his body. Based on these facts, we find that no reasonable juror could conclude that Powers acted " ' "rashly or without due deliberation and reflection, and from . . . passion rather than from judgment." ' " (*Breverman, supra*, 19 Cal.4th at p. 163.) The evidence was

insufficient to justify an instruction on heat of passion. (*Id.* at p. 162.)

Cases relied on by Powers, *People v. Millbrook* (2014) 222 Cal.App.4th 1122 and *People v. Thomas* (2013) 218 Cal.App.4th 630, are distinguishable. In *Millbrook*, the victim had acted belligerently throughout the party, engaged in intense arguments with the defendant's girlfriend, warned defendant to " 'check your bitch' " immediately before the shooting, was physically intimidating and much bigger in size. (*Millbrook*, at p. 1140.) In *Thomas*, the victim and defendant had a history of disputes over parking and whether defendant would move his car to not block the victim's and others' cars. (*Thomas*, at p. 634.) On the fatal night, the victim and two other people fought with defendant, and various accounts had defendant "crying, calling out for his father and being dragged across the apartment parking lot." (*Id.* at p. 645.) The defendant was visibly angered by these events, and believed the victim was lunging for his gun when he fired it. (*Ibid.*) *Millbrook* and *Thomas* are inapposite here based on their readily distinguishable facts.

Under the circumstances, if the jury believed Powers's version of events, it could find he fired in reasonable or unreasonable self-defense, but not that he was acting under any " '[violent], intense, high-wrought or enthusiastic emotion' " that obscured his reasoning or judgment. (*People v. Berry* (1976) 18 Cal.3d 509, 515.) The trial court did not err in refusing to provide a jury instruction on a sudden quarrel/heat of passion theory of voluntary manslaughter.

B

*Harmless Error Analysis*

10

Assuming arguendo that it was error for the trial court to fail to instruct the jury on a heat of passion theory of voluntary manslaughter in addition to the instruction that was given on unreasonable self-defense, the People urge us to find such error harmless under the *Watson* test (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*)), made applicable to instructional errors of this sort in California trials by *Breverman, supra,* 19 Cal.4th at pages 177-178. We agree that even if it was error to fail to instruct on heat of passion voluntary manslaughter on this record, any such error was harmless as it is not reasonably probable Powers would have obtained a more favorable outcome had the jury been so instructed. (*Id.* at p. 178.)

Under *Watson,* our posttrial review focuses on what a jury is likely to have done in the absence of the error under consideration. (*Breverman*, *supra*, 19 Cal.4th at p. 177.) "In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*Ibid.*)

Here, once the jury rejected Powers's claims of reasonable and imperfect self-defense, there was little if any independent evidence remaining to support his further claim that he killed in the heat of passion, and no direct testimonial evidence from Powers himself to support an inference that he *subjectively* harbored such strong passion, or acted rashly or impulsively while under its influence for reasons unrelated to his perceived need for self-defense. The jury necessarily considered and rejected the notion that Powers or Morris were in imminent danger or use of deadly force was necessary.

11

(CALJIC No. 571.) Instead, the evidence established beyond a reasonable doubt that Powers intentionally and methodically discharged the gun several times to shoot and kill Sutton, after which he permanently disposed of the murder weapon and repeatedly denied any involvement. Powers's claim that he was agitated to such an extent that he did not know how many shots he fired or in what manner he fired was ultimately rejected by the jury when it considered such evidence and found he had killed with malice.

Furthermore, having rejected the factual basis for the claims of reasonable and unreasonable self-defense, it is not reasonably probable the jury would have found the requisite *objective* component of a heat of passion defense (legally sufficient provocation) even had it been instructed on that theory of voluntary manslaughter. Upon examining the entire cause, including the evidence, we conclude it is not "reasonably probable" Powers would have obtained a more favorable outcome at trial had a heat of passion instruction been given. (*Watson, supra,* 46 Cal.2d at p. 836; *Moye, supra*, 47 Cal.4th at pp. 557-558.)

## DISPOSITION

The judgment is affirmed.

                                                                    McINTYRE, J.

WE CONCUR:


McDONALD, Acting P. J.


O'ROURKE, J.